COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


CHEMICAL PRODUCERS AND
   DISTRIBUTORS ASSOCIATION, INC. AND
   STATE FARM FIRE AND CASUALTY COMPANY
                                                     MEMORANDUM OPINION* BY
v.      Record No. 1716-08-4                         JUDGE ROBERT J. HUMPHREYS
                                                     JUNE 9, 2009
LINDA ANN PERRY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Benjamin J. Trichilo (Trichilo, Bancroft, McGavin, Horvath &
              Judkins, P.C., on briefs), for appellants.

              (Linda Ann Perry, *pro se*[1]).


       Chemical Producers & Distributors Association, Inc. and State Farm Fire and Casualty

Company (collectively "employer") appeal a decision of the Workers' Compensation

Commission ("the commission") awarding benefits to Linda Ann Perry ("Perry").  On appeal,

employer argues that Perry's willful preparation and submittal of a fabricated and fraudulent

document to employer, coupled with her prior poor work performance are sufficient to show

conduct unrelated to her disability that warrants a permanent suspension of benefits.  Thus,

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Perry's brief was rejected pursuant to Rule 5A:19(a).  Rule 5A:19(a) provides that
"[e]xcept by permission of a judge of the Court of Appeals, neither the opening brief of
appellant, nor the brief of appellee . . . shall exceed 35 typed or 25 printed pages."  Perry's brief
greatly exceeded these page limitations, and she did not receive the requisite permission to do so.
Because Perry's brief was rejected, she was not permitted to argue before the panel.  On May 20,
2009, Perry filed a motion with this Court, asking for time in which to file a new brief and argue
orally before the panel.  On May 21, 2009, we allowed Perry to argue her motion before the
panel.  After hearing from Perry and counsel for appellants, we denied Perry's motion.

employer contends that the commission erred when it found that Perry's conduct was not so egregious that she should forever lose her right to receive compensation benefits. For the following reasons, we agree.

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 84, 608 S.E.2d 512, 517 (2005) (en banc). In addition, we are bound by the factual findings of the commission, so long as they are supported by credible evidence in the record. Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). So viewed, the evidence established the following.

Employer is a small company with five full-time staff members. In July of 2006, employer hired Perry as an "executive assistant/meeting planner." In December of 2006, Perry received a positive performance evaluation, though employer noted a few areas in which she could improve. Perry's job performance deteriorated substantially in the months that followed her December evaluation. According to employer's president, Susan Ferenc ("Ferenc"), Perry claimed that her supervisor promised her a raise and a promotion. However, when Ferenc spoke to Perry's supervisor, he denied making such a promise.

On February 5, 2007, Ferenc met with Perry to discuss her poor work performance and attitude. Ferenc informed Perry that she did not work as a team member, failed to perform her job duties, and had difficulty prioritizing tasks. In addition, Ferenc expressed concern over Perry's failure to provide information on the status of various projects and Perry's claims that certain tasks were too "monumental" for her to complete. Ferenc placed Perry on probation during the February meeting.

On February 23, 2007, Perry slipped and fell on ice outside of employer's office door, sustaining injuries to her neck, back, and knees. Perry was still on probation at the time of her injury. Following her fall, Perry left three "afterhours" messages on employer's voicemail indicating that she would be out indefinitely. Ferenc attempted to get in contact with Perry via email and telephone on numerous occasions, but was unsuccessful. On March 8, 2007, Ferenc sent an email to Perry explaining that company policy required her to provide employer with a "physician substantiation of the injury."[2] Perry did not respond to this email.

Finally, on March 12, 2007, Ferenc terminated Perry.[3] Ferenc sent Perry notice of her termination by email, regular mail, and certified mail. The notice of termination stated that the reasons for Perry's dismissal were her poor work performance and attitude. Despite her termination, on March 14, 2007, Perry filed a claim for benefits alleging an injury by accident to her neck, back, and knees arising out of her fall on February 23, 2007.

On January 7, 2008, the deputy commissioner held a hearing on Perry's claim. At the hearing, Ferenc testified that Perry's termination was due to her failure to complete work in a timely manner, her poor attitude, and her failure to comply with company policy. The deputy commissioner found, *inter alia*, that Perry suffered a compensable injury and that "although [employer] had reasonable grounds for dismissing [Perry], there is no evidence of intentional misconduct on the part of [Perry] that evidenced a disregard for [employer's] interests." Thus, the deputy commissioner concluded that Perry's dismissal did not preclude her from receiving benefits.

---

[2] Ferenc testified that employer's policy stated that an "absence due to illness or injury must be reported to the president by 9 a.m. on the date of the absence."

[3] Perry's termination was effective on March 15, 2007.

On review, the commission found that Perry's termination was reasonable, but that her "conduct was not so egregious that she should forever lose the right to receive compensation benefits." Employer now appeals to this Court.

"[A]n employee 'who is terminated for cause and for reasons not concerning his disability is not entitled to receive compensation benefits.'" Artis, 45 Va. App. at 84, 608 S.E.2d at 517 (quoting Chesapeake & Potomac Telephone Co. v. Murphy, 12 Va. App. 633, 637, 406 S.E.2d 190, 192, aff'd en banc, 13 Va. App. 304, 411 S.E.2d 444 (1991)). This is because "'any subsequent wage loss is properly attributable to his wrongful act rather than his disability.'" Id. (quoting Murphy, 12 Va. App. at 639-40, 406 S.E.2d at 193). In determining whether or not an employee was terminated for cause, "it is not necessary to prove 'that the employee's wrongful act was intentional, willful or deliberate . . . .'" Id. at 85, 608 S.E.2d at 518 (quoting Walter Reed Convalescent Ctr. v. Reese, 24 Va. App. 328, 336-37, 482 S.E.2d 92, 97 (1997)). Instead, "all that is required is a showing: (1) that the wage loss is 'properly attributable' to the wrongful act; and (2) that the employee is 'responsible' for that wrongful act." Id.

The first prong of the Artis test concerns the "relationship between the disability and the claimant's *termination*." Id. at 88, 608 S.E.2d at 519 (emphasis in original). "[T]here must be an immediate, proximate nexus between the disability and the termination for the termination to be deemed 'attributable to' the disability." Id. (footnote omitted).

Based upon the standard of review, we must assume that Perry's termination was not due to her disability, but rather her poor work performance and attitude.[4] Ferenc testified that

---

[4] Employer argues that a "fabricated" email sent by Perry to Ferenc "break[s] any casual chain between her disability and the termination of employment." However, the evidence in the record establishes that Perry sent the email in question *after* she received notice of her termination. Therefore, the conduct for which Perry was terminated did not include the email to Ferenc and apparently was not and should not be included in any Artis analysis by the commission, since it was conduct that occurred post-termination.

employer placed Perry on probation on February 5, 2007 because, among other things, she did not work as a team member, failed to perform her job duties, and had difficulty prioritizing tasks. Ferenc further testified that Perry failed to comply with company policy following her injury by not informing employer of her expected absence. Based on the evidence presented, the commission concluded that Perry's termination was attributable to her poor job performance and her "failure to contact employer regarding her expected absence from work due to her work injury." Because the commission's conclusion is supported by credible evidence in the record, for the purposes of any analysis under Artis, it is conclusive and binding upon this Court.

The second prong of the Artis test concerns "whether the claimant was 'responsible' for his wrongful act." Id. at 91, 608 S.E.2d at 521. Under this prong, "[t]he crucial determination is whether the claimant's misconduct was voluntary or involuntary." Id. If the claimant's misconduct was voluntary, then a forfeiture of benefits is justified. Id. However, if the claimant's misconduct was involuntary, meaning that the conduct was "beyond the [claimant's] control," a forfeiture of benefits is not justified. Id.

In this case, the commission made no findings and conducted no analysis with respect to the second prong of the Artis test. Instead, the commission concluded that Perry's "conduct was not so egregious that she should forever lose the right to receive compensation benefits." This was not the correct legal standard for the commission to apply. See Shenandoah Motors, Inc. v. Smith, 53 Va. App. 375, 392 n.3, 672 S.E.2d 127, 135 n.3 (2009) (explaining that the Artis test is the correct standard to apply when "establish[ing] a termination for cause and a forfeiture of subsequent compensation benefits"). Therefore, we remand this case to the commission and direct it to determine whether Perry's misconduct was voluntary or involuntary and to apply those findings to the correct legal standard as set forth in Artis.

Reversed and remanded.