COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Beales and Senior Judge Clements
Argued at Richmond, Virginia


SHENANDOAH MOTORS, INC. AND
   VADA GROUP SELF-INSURANCE
   ASSOCIATION
                                                    OPINION BY
v.        Record No. 0883-08-4        JUDGE JEAN HARRISON CLEMENTS
                                                    FEBRUARY 10, 2009
BARBARA JEAN SMITH


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Bryan M. Kirchner (Angela F. Gibbs; Midkiff, Muncie, and Ross,
          P.C., on briefs), for appellants.

          M. Thomas McWeeny (Koonz, McKenney, Johnson, DePaolis &
          Lightfoot, L.L.P., on brief), for appellee.


          Shenandoah Motors, Inc. and VADA Group Self-Insurance Association (collectively,

employer) appeal a decision of the Workers' Compensation Commission (commission) awarding

temporary partial disability benefits to Barbara Jean Smith (claimant).  In reaching that decision,

the commission concluded that claimant's post-injury termination from full-duty employment

with employer, even if that termination was for cause, did not bar her, under Code § 65.2-510,

from receiving post-termination partial disability benefits, because employer made no "actual

bona fide job offer" of selective employment during claimant's period of partial disability and

the conduct of claimant that led to her termination was not "criminal or sufficiently egregious" to

waive that requirement.  On appeal, employer contends the commission erred in holding

employer did not establish a constructive refusal of selective employment under Code

§ 65.2-510, even though the evidence showed employer would have made suitable light-duty

employment available to claimant during the period of her partial disability but for her prior

termination for cause, and, alternatively, in finding claimant's misconduct and poor sales performance at work insufficiently egregious to bar her claim. Under the facts of this case, we reverse the commission's decision awarding claimant temporary partial disability benefits and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On August 17, 2005, claimant suffered a compensable injury to her left hip while working for employer as a car salesperson, and an award of medical benefits was subsequently issued. Claimant's treating physician released her to return to work on September 8, 2005, with no restrictions. Claimant returned to work that day and resumed her normal work duties and hours with employer.[1] Claimant continued on full-duty work with employer until she was fired on November 29, 2005, for repeatedly failing to meet her monthly sales quota and for her poor work habits. Claimant was under no work restrictions at the time of her discharge.

On June 1, 2006, claimant's treating physician placed her on light-duty restrictions due to hip and back problems related to her August 17, 2005 injury. Claimant obtained suitable light-duty employment on her own.

On August 4, 2006, claimant filed a claim for temporary partial disability benefits from June 1, 2006, and continuing.

At the May 22, 2007 hearing before the deputy commissioner, the parties stipulated that claimant's post-termination back and hip problems were compensable consequences of her August 17, 2005 injury and that claimant had been partially disabled since June 1, 2006, and

---

[1] Claimant subsequently argued in a written statement to the commission that, upon her return to work, employer disregarded her "disability slip" and "directed [her] to perform heavy[-]duty work [despite her] physical incapacity." It is clear from the record, however, that the only "slip" claimant presented to employer—a "Return to School/Work" slip—specifically stated she was "able to return to school/work on 9/8" and listed no restrictions. Moreover, the one time claimant expressed any concern to her supervisor about her physical ability to perform a certain job-related task, the supervisor directed another employee to assist her.

continuing. The parties further stipulated that claimant had a pre-injury weekly wage of $402.90 and a post-injury weekly wage of $114.67. Employer defended the claim on the ground that claimant was terminated for cause. Claimant objected to "the late assertion" of employer's defense and moved to have it stricken. Taking claimant's motion under advisement, the deputy commissioner heard evidence on employer's defense.

Robert Houck, general manager for employer, testified at the hearing that he first became aware of claimant's poor work habits and inferior sales performance in early June 2005. At the time, claimant's sales average for the year was 5.2 vehicles per month, which was below the minimum sales standard of eight vehicles per month and the lowest average of all of employer's sales associates, the rest of whom regularly "ma[de] their quota." According to Houck, claimant often arrived late to work, slept and played solitaire in her office during work hours, failed to greet customers when they came on the lot, was rude to customers and co-workers, and even told at least one of her co-workers that she wished employer would "fire her so she could draw unemployment." Houck testified that claimant's poor sales performance and misconduct continued after her accident. Houck further testified that, despite numerous warnings from employer's sales manager and a warning from Houck himself in September 2005, claimant's work habits and sales performance did not improve and, after selling only three vehicles in October and only two in November, claimant was fired on November 29, 2005. Lastly, Houck stated that he was not aware of claimant having been placed on any light-duty restrictions related to her August 17, 2005 injury by accident, but, "[i]f there had been light[-]duty restrictions, [he] would have been able to work with her to accommodate [those] restrictions."

In response to the only two questions asked of him on cross-examination, Houck testified that claimant's sleeping at work was not limited to her lunch hour.

Claimant testified that she slept at work only during her lunch hour and that she was not the only salesperson who ignored customers on the lot. She denied ever playing solitaire "while there were customers on the floor." She admitted not making her sales quota in certain months, but blamed the other salespeople for "contributing to [her] lack of sales" by preventing her from approaching customers. She further stated that she met her sales quota "numerous times" in the past and was, in fact, previously awarded for her sales performance.

In a written statement in support of her motion to strike employer's defense, claimant argued that employer's failure to notify her of its intent to assert the termination for cause defense until after the close of business on Friday, May 18, 2007, deprived her of the chance to properly investigate that previously unidentified defense and adequately challenge it at the May 22, 2007 hearing. Claimant also argued, relying on M & S Auto Parts, Inc. v. Presgraves, 45 Va. App. 455, 611 S.E.2d 655 (2005), that the termination for cause defense under Code 65.2-510(A) was inapplicable as a matter of law in this case because she was working full duty when she was terminated by employer and employer did not offer her suitable selective employment after her physician placed her on light-duty restrictions on June 1, 2006.[2]

In response, employer asserted that it notified claimant of its intent to raise the termination for cause defense "immediately after determining" that the defense was appropriate and that claimant had adequate notice of the defense and could not "demonstrate any prejudice resulting from the timing of [the] notification." Employer also argued that Presgraves was factually distinguishable and thus inapplicable to this case, because, unlike in Presgraves,

---

[2] In support of her motion, claimant also made reference to a settled Equal Employment Opportunity Commission claim she had filed against employer. Because the terms of that settlement were confidential and not entered into evidence at the May 22, 2007 hearing, we, like the commission, will not consider those terms on review.

employer presented evidence in this case to show that, but for claimant's termination for cause, "employer could and would have accommodated" claimant's light-duty restrictions.

Initially finding that claimant "had adequate notice of [employer's] defense and [could] demonstrate no prejudice in the timing of the notification," the deputy commissioner denied claimant's motion to strike employer's defense on that ground. Then, focusing on "employer's unrebutted testimony that, but for . . . claimant's termination for poor performance, light-duty [work] would have been made available to . . . claimant once restrictions were imposed in June of 2006," the deputy commissioner ruled as follows:

> Under the specific facts presented in the present case, the Commission finds that the claimant's termination was for justified cause and is relevant because this termination was the cause of her economic loss after her termination. Specifically, had the claimant not been terminated for cause, her employer would have had light-duty work available for her. Thus, under these circumstances, the decision in Presgraves is distinguishable. Consequently, given the determination that the claimant was terminated for justified cause and, had she not been, would have been offered light-duty work, the claimant's claim for temporary partial disability benefits beginning June 1, 2006, forward and continuing is DENIED.

Claimant then appealed the deputy commissioner's decision to the full commission. Claimant assigned error to the deputy commissioner's (1) denial of her motion to strike employer's defense on the basis that she had adequate notice of the defense and could demonstrate no prejudice in the timing of the notification and (2) denial of her claim for benefits on the basis that she was terminated for cause and, but for that termination, employer would have had light-duty employment available for her.

Reviewing the deputy commissioner's determination that "employer proved a constructive refusal of selective employment" under Code § 65.2-510, the commission found: "The facts are not in dispute. . . . Houck confirmed . . . he would have accommodated [claimant's work] restrictions if she had not been terminated for cause." The commission further

concluded that, because claimant was fired from full-duty employment "for job performance issues," her termination "may" have been for cause. However, relying on the principle enunciated in Presgraves that "an employer seeking to invoke the bar of Code § 65.2-510 bears the burden of establishing that it offered to the injured employee 'employment . . . suitable to his capacity,'" id. at 463-64, 611 S.E.2d at 659 (omission in original) (quoting Code § 65.2-510(A)), the commission reversed the deputy commissioner's decision, reasoning as follows:

> Thus, in the instant case, the employer who terminated the claimant while she was on full duty cannot claim constructive refusal of selective employment in the future if the claimant is restricted to light duty without an actual bona fide job offer. However, this is not without exceptions. An employer cannot be held responsible for an employee's wage loss when an employee's conduct is criminal or sufficiently egregious to prevent employment with them or any other similarly situated employer. The original employer cannot be forced to offer bona fide light-duty employment when the employee's wage loss is attributable to his or her criminal or egregious act. Here no exception applies.

Accordingly, the commission awarded claimant temporary partial disability benefits commencing June 1, 2006, and continuing. Having reversed the deputy commissioner's decision and resolved the case on other grounds, the commission found that claimant's objection to the timing of employer's assertion of its termination for cause defense was "no longer applicable" and refused to address it.

This appeal by employer followed.

## II. ANALYSIS

On appeal, employer contends the commission erred in holding Code § 65.2-510 does not bar claimant's receipt of temporary partial disability benefits from June 1, 2006, and continuing. Specifically, employer argues the commission erroneously concluded, in reliance on Presgraves, that claimant's termination from full-duty employment, even if it was for cause, did not constitute a constructive unjustified refusal of selective employment barring her subsequent

- 6 -

receipt of partial disability benefits under Code § 65.2-510, because employer made no "actual bona fide job offer" of selective employment to claimant after she became partially disabled. Employer asserts that Presgraves is expressly limited to the distinguishable facts of that case and, indeed, indicates, based on the caveat contained therein contemplating a contrary result under different facts, that no actual offer of light-duty employment is needed under Code § 65.2-510 where, as in this case, the evidence shows the employer would have made suitable light-duty employment available to the employee but for the employee's termination for cause. Alternatively, employer argues the commission wrongly found that the conduct for which claimant was terminated was not sufficiently egregious to negate the need for an actual bona fide offer of suitable employment and warrant a forfeiture of her disability benefits. In response, claimant contends that, pursuant to the dictates of Presgraves, Code § 65.2-510 does not apply to bar the receipt of partial disability benefits "when an employee is terminated from a post-injury, full-duty position and thereafter becomes partially disabled." We agree with employer that, under the facts of this case, an "actual" post-termination bona fide offer of suitable light-duty employment is not necessary to establish a constructive refusal of selective employment under Code § 65.2-510.

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 84, 608 S.E.2d 512, 517 (2005) (en banc). Moreover, "we are bound by the commission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Id. at 83-84, 608 S.E.2d at 517 (emphasis omitted) (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)).

- 7 -

However, "we review questions of law *de novo*." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

Code § 65.2-510(A) provides as follows:

> If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 and 65.2-603, excluding vocational rehabilitation services provided for in subdivision A 3 of § 65.2-603, during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

While an injured employee is generally permitted to "cure" such an unjustified refusal of selective employment by subsequently accepting the selective employment procured by the employer or obtaining other selective employment, it is well settled that "an employee on selective employment offered or procured by the employer, who is discharged for cause and for reasons not concerning the disability, forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause." Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994) (citations omitted); see also Artis, 45 Va. App. at 84, 608 S.E.2d at 517 ("[A]n employee 'who is terminated for cause and for reasons not concerning his disability is not entitled to receive compensation benefits.'" (quoting C & P Telephone Co. v. Murphy, 12 Va. App. 633, 637, 406 S.E.2d 190, 192, aff'd en banc, 13 Va. App. 304, 411 S.E.2d 444 (1991))); Potomac Edison Co. v. Cash, 18 Va. App. 629, 631, 446 S.E.2d 155, 157 (1994) ("[A]n employee who is properly terminated from selective employment procured by the employer for cause consisting of willful misconduct forfeits his or her entitlement to future temporary partial disability benefits."). This is so because,

> where a disabled employee is terminated for cause from selective employment procured or offered by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability. The employee is responsible for that loss and not the employer. In this context, we are unable to find any provision within the Workers' Compensation Act which evidences an intent by the legislature to place such an employee in a better position

> than an uninjured employee who is terminated for cause and by his wrongful act suffers a loss of income.

Murphy, 12 Va. App. at 639-40, 406 S.E.2d at 193; cf., e.g., Marval Poultry Co. v. Johnson, 224 Va. 597, 601, 299 S.E.2d 343, 345 (1983) (holding that the employer was not responsible for the employee's post-dismissal wage loss because there was "nothing in the record from which it [could] reasonably be inferred that [the employee] was dismissed because of his [disability]" rather than his wrongful act); Walter Reed Convalescent Ctr. v. Reese, 24 Va. App. 328, 338, 482 S.E.2d 92, 97-98 (1997) (holding that the employee's post-termination wage loss "was not [the] employer's responsibility" because the employee's "termination was unrelated to her injury and was due solely to her misconduct"); Richfood, Inc. v. Williams, 20 Va. App. 404, 405, 457 S.E.2d 417, 417 (1995) (holding that, because the employee's "termination was for cause, any subsequent wage loss was due to [his] wrongful act rather than his disability, and thus, was not [the employer's] responsibility").

Thus, we have held that, to establish a termination for cause and a forfeiture of subsequent compensation benefits under the forfeiture rule associated with Code § 65.2-510(A), "the 'wage loss [must be] properly attributable to [the employee's] wrongful act . . . [for which t]he employee is responsible.'" Eppling v. Schultz Dining Programs, 18 Va. App. 125, 129, 442 S.E.2d 219, 222 (1994) (alterations and omission in original) (quoting Murphy, 12 Va. App. at 639-40, 406 S.E.2d at 193). Indeed, "the underlying premise of the rule . . . is to hold employees responsible *only* for any wage loss properly attributable to their wrongful conduct." Cash, 18 Va. App. at 633, 446 S.E.2d at 157 (emphasis added). Accordingly, "all that is required [to establish a termination for cause and a forfeiture of subsequent compensation benefits] is a showing: (1) that the wage loss is 'properly attributable' to the [employee's] wrongful act; and (2) that the employee is 'responsible' for that wrongful act." Artis, 45 Va. App. at 85, 608 S.E.2d at 518 (quoting Reese, 24 Va. App. at 336, 482 S.E.2d at 97).

- 9 -

Hence, the forfeiture rule does not apply, for example, to "bar [an employee's] application for benefits after termination for cause when [the employee] subsequently suffers *total* disability caused by the prior work-related injury." Cash, 18 Va. App. at 632, 446 S.E.2d at 157. Because the employee's post-termination total disability is caused by the "prior compensable injury," the wage loss at issue in such a case "is properly attributable to [the employee's] total disability and not to any employee misconduct." Id. at 634, 446 S.E.2d at 158. Accordingly, the employee is not responsible for that wage loss and thus not barred from receiving benefits. Id.

It is well settled, therefore, that the determinative factor in assessing an employee's entitlement, under Code § 65.2-510(A), to compensation benefits after termination for cause from light-duty employment is whether the employee's post-termination wage loss is properly attributable to the employee's wrongful conduct. Where the wage loss is properly attributable to the employee's wrongful conduct, the employee is responsible for the loss and thus barred from receiving post-termination compensation benefits, see, e.g., Williams, 20 Va. App. at 405, 410, 457 S.E.2d at 417, 420, and, where the wage loss is not properly attributable to the employee's wrongful conduct, the employee is not responsible for the loss and thus not barred from receiving post-termination compensation benefits, see, e.g., Cash, 18 Va. App. at 632, 634, 446 S.E.2d at 157, 158. Consistent with our decision and analysis in Presgraves, we hold that the same principles also apply when an injured employee is terminated for cause from full-duty employment.

In Presgraves, we considered, as a "matter of first impression" in Virginia, "the impact of Code § 65.2-510 on an injured employee who [was] terminated for cause while working [full duty] and subsequently [became] partially disabled." 45 Va. App. at 460, 611 S.E.2d at 657-58. The employee in Presgraves suffered a compensable injury at work and was subsequently

released back to work without restrictions. Id. at 457, 611 S.E.2d at 656. The employee resumed his pre-injury duties and continued on full-duty work until his employer discharged him on December 16, 2002, for repeated tardiness. Id. at 458, 611 S.E.2d at 656. The employee "had no work restrictions at the time of his termination." Id. On April 23, 2003, the employee's physician placed him on light-duty restrictions due to his compensable injury. Id. The employee subsequently contacted the employer on two separate occasions seeking employment within his restrictions. Id. at 458, 611 S.E.2d at 657. On both occasions, the employer informed him that there were no such positions available. Id.

Thereafter, the employee sought disability benefits from the date he was terminated and continuing. Id. The deputy commissioner denied the entire claim, concluding that, under the forfeiture rule, the employee "was not entitled to disability benefits because he was fired for cause in December 2002 and would be entitled to benefits only during periods of temporary total disability." Id. at 459, 611 S.E.2d at 657.

On review, a majority of the full commission reversed the deputy commissioner's decision and awarded the employee disability benefits during the period of his partial disability, from April 23, 2003, and continuing. Id. Each of the commissioners, however, including the two in the majority, gave different rationales for their decisions.

Writing for the commission, Commissioner Diamond cited the forfeiture rule's application where a partially disabled employee is terminated "'from selective employment'" and noted as follows:

> "The employer offered no evidence that light duty work would have been made available to the claimant—after the claimant was placed on light duty in April of 2003—had the claimant not been terminated in December of 2002. Thus, the employer's reasons for terminating the claimant are irrelevant in this proceeding and the claimant was not precluded from obtaining future disability compensation because of his termination from his full duty job on December 16, 2002."

- 11 -

Id. (quoting Presgraves v. M & S Auto Parts, Inc., No. 213-24-00, 2004 VA Wrk. Comp. LEXIS

649, at *11-*12 (Sept. 7, 2004)).

Concurring, Commissioner Dudley opined that

> "an employee's termination for justified cause while working full
> duty may be relevant, and would be a cause of his economic loss,
> where his misconduct effectively removes him from future
> light-duty employment with the employer that could have
> otherwise been available.  In this case, the claimant contacted the
> employer on several occasions seeking light duty.  He was told that
> there were no positions available.  There is no evidence of record
> that a suitable light-duty position would have been available, or
> may have been available, but for the claimant's misconduct.
> Under the circumstances, I agree that his misconduct in this case
> does not prevent him from receiving benefits, because there is no
> evidence that light duty may have been a viable alternative, if he
> had left his full-duty work due to partial incapacity, rather than
> misconduct."

Id. at 459-60, 611 S.E.2d at 657 (quoting Presgraves, 2004 VA Wrk. Comp. LEXIS 649, at

*15-*16 (Dudley, C., concurring)).

Commissioner Tarr dissented, reasoning as follows:

> The majority reverses the Deputy Commissioner's finding
> that the claimant was terminated for justified cause because there
> was no evidence that the claimant would have been given a job by
> the employer when he next was released to light duty in April
> 2003.  The majority's rationale for reversing apparently relates to
> the requirement of [the forfeiture rule] that the employer must
> prove that the claimant's economic loss was caused by his
> misconduct.
> Here, the economic loss was proven.  Had the claimant not
> chronically violated his employer's attendance policy, he would
> have continued his employment.  Any wage loss suffered was a
> result of the claimant's termination rather than his injury.  I find
> temporary partial benefits are barred.

Presgraves, 2004 VA Wrk. Comp. LEXIS 649, at *16-*17 (Tarr, C., dissenting).

On appeal, we affirmed the commission's decision, "under the facts of [the] case."

Presgraves, 45 Va. App. at 456, 611 S.E.2d at 655.  Examining the statute's express language,

we concluded that, for Code § 65.2-510(A) to apply to bar an employee's receipt of

- 12 -

compensation benefits, "the job the employee refuses must be a suitable *light-duty* position procured for the employee by the employer." Id. at 464, 611 S.E.2d at 659. On that basis, we further concluded that "the terms of Code § 65.2-510(A) expressly do not apply" where the employee is terminated for cause from post-injury, full-duty employment, because such employment "is neither a light-duty position nor a position procured by the employer." Id. at 464, 611 S.E.2d at 659-60. We also reasoned that,

> [t]o hold that an injured employee's termination for cause from post-injury, full-duty employment forever bars the employee from receiving disability benefits during subsequent periods of partial disability is an exceedingly harsh result not required by the language of the Workers' Compensation Act and might result in a windfall to employer.

Id. at 464-65, 611 S.E.2d at 660. Implicitly responding to Commissioner Dudley's concurring opinion, we added the following caveat:

> We need not decide whether Code § 65.2-510 permits an employer to establish a constructive refusal of selective employment by showing that, but for a claimant's earlier termination for cause while working full duty, it would have had suitable selective employment available for the claimant when he later became partially disabled. As set out above, an employer seeking to invoke the bar of Code § 65.2-510(A) bears the burden of establishing that it offered to the injured employee "employment . . . suitable to his capacity." Here, employer did not allege that it would have had available to claimant, but for his termination for cause, "employment . . . suitable to his capacity." A majority of the commission found the record contained no evidence that suitable light-duty work would have been available but for claimant's misconduct, and the record supports that finding.

Id. at 465, 611 S.E.2d at 660 (omissions in original).

It is clear that, as factually limited by the caveat, our holding in Presgraves—that Code § 65.2-510(A) does not bar the award of post-termination temporary disability benefits to an employee who was terminated for cause from post-injury, full-duty employment with the employer where there is no showing that the employer would have had post-termination selective

- 13 -

employment available for the employee but for the employee's earlier termination for cause—is consistent with the forfeiture rule's underlying premise "hold[ing] employees responsible *only* for any wage loss properly attributable to their wrongful conduct." Cash, 18 Va. App. at 633, 446 S.E.2d at 157 (emphasis added).

As Commissioner Dudley reasoned in his concurring opinion in Presgraves, the employee's wage loss was not properly attributable to the employee's wrongful conduct because there was no evidence in the record to show that the employer would have been able to procure selective employment for the employee even if the employee "'had left his full-duty work due to partial incapacity, rather than misconduct.'" Presgraves, 45 Va. App. at 460, 611 S.E.2d at 657 (quoting Presgraves, 2004 VA Wrk. Comp. LEXIS 649, at *16 (Dudley, C., concurring)). Indeed, given the employer's failure to establish that it would have made selective employment available to the employee had he not been terminated for cause, it could not be said whether the employee's wage loss during his post-termination period of partial disability was caused by his misconduct or the employer's inability to procure selective employment for the employee. Consequently, we could not say in Presgraves that, but for his misconduct, the employee would not have sustained the wage loss. Accordingly, the employer was responsible for the wage loss, and to hold otherwise would, as we implicitly concluded in Presgraves, "result in a windfall to employer." Id. at 464-65, 611 S.E.2d at 660.

In this case, we are faced with the precise facts addressed in the caveat in Presgraves. As the commission expressly found, "employer testified it 'would have' offered . . . claimant appropriate light[-]duty employment but for her termination for cause." That testimony was uncontradicted, and the commission implicitly accepted it as credible. Thus, unlike in Presgraves, we need to decide in this case "whether Code § 65.2-510(A) permits an employer to establish a constructive refusal of selective employment by showing that, but for a claimant's

earlier termination for cause while working full duty, it would have had suitable selective employment available for the claimant when he later became partially disabled." Id. at 465, 611 S.E.2d at 660. Applying the principles set forth above pertaining to the forfeiture rule, we hold that it does.

As Commissioner Dudley reasoned in his concurring opinion in Presgraves, "'an employee's termination for justified cause while working full duty . . . would be [the] cause of his economic loss, where his misconduct effectively removes him from future light-duty employment with the employer *that [would] have otherwise been available*.'" Id. at 459-60, 611 S.E.2d at 657 (emphasis added) (quoting Presgraves, 2004 VA Wrk. Comp. LEXIS 649, at *15-*16 (Dudley, C., concurring)). Indeed, where the employer establishes that, but for the employee's termination for cause, it would have made post-termination selective employment available to the employee during the period of his or her partial disability, the wage loss would plainly be caused by the employee's wrongful conduct and resultant termination, rather than the employer's inability to procure selective employment for the employee. Thus, the wage loss would be properly attributable to the employee and Code § 65.2-510(A) would apply to bar the employee's receipt of compensation benefits. Under such circumstances, no "actual bona fide job offer" by employer would be required. It would be enough for the employer to show that, but for the employee's earlier termination for cause while working full duty, it would have had suitable selective employment available for the employee when he or she later became partially disabled. Accordingly, the commission erred in rejecting employer's termination for cause defense on that basis.[3]

---

[3] In light of this resolution, we need not fully address employer's alternative contention that the commission erred in finding that the conduct for which claimant was terminated was not sufficiently egregious to negate the need for an actual bona fide offer of suitable employment and warrant a forfeiture of her disability benefits under Code § 65.2-510(A). Suffice it to say, no such legal standard has been recognized by this Court. Indeed, as previously mentioned, we held

We reject claimant's argument that our decision in this case will allow every employer to "avoid the application of Presgraves" and undermine its prevention of "employer windfalls" by simply giving "cost-free testimony" that selective employment "could have been offered" but for the employee's termination. Claimant's position ignores the fact that testimony before the commission is given under oath and subject to adversarial testing through cross-examination and rebuttal evidence. Moreover, the preponderance of the evidence must persuade the commission, which, in its role as finder of fact, has to assess the credibility of the witnesses and weigh the evidence, that the employer met its burden of proof under Code § 65.2-510(A). In this case, employer's testimony on the issue whether it would have had selective employment available for claimant but for her termination for cause was not meaningfully contested by claimant, either through cross-examination or rebuttal evidence, and the commission found the evidence uncontradicted and credible. Clearly, the same would not be true in every such case.

We hold, therefore, that, to establish a constructive refusal of selective employment under Code § 65.2-510(A) in this case, employer could prove that the wage loss at issue was properly attributable to claimant by showing that, but for claimant's earlier termination for cause from post-injury, full-duty employment, it would have had selective employment available for claimant during the post-termination period of her partial disability. As previously mentioned, the commission found that "employer testified it 'would have' offered . . . claimant appropriate light[-]duty employment but for her termination for cause" and that such testimony was uncontradicted and credible. However, having erroneously decided that employer failed to establish a constructive refusal of selective employment under Code § 65.2-510(A) because it did

---

in Artis that "all that is required [to establish a termination for cause and a forfeiture of subsequent compensation benefits] is a showing: (1) that the wage loss is 'properly attributable' to the [employee's] wrongful act; and (2) that the employee is 'responsible' for that wrongful act." 45 Va. App. at 85, 608 S.E.2d at 518 (quoting Reese, 24 Va. App. at 336, 482 S.E.2d at 97).

not make "an actual bona fide job offer" of selective employment to claimant, the commission did not fully resolve the question whether claimant was terminated for cause. Indeed, the commission solely found that claimant's termination "may" have been for cause. Likewise, the commission left unresolved claimant's objection to the timing of employer's assertion of its termination for cause defense. Accordingly, the commission will need to resolve these matters on remand.

## III. CONCLUSION

For these reasons, we reverse the commission's decision awarding claimant temporary partial disability benefits and remand the case to the commission for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>